UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-80811-CIV-ZLOCH/SNOW

C.M.A.,

      Plaintiff,

vs.

JEFFREY EPSTEIN and
SARAH KELLEN,

      Defendants.

_____/

FILED UNDER SEAL[1]

FILED by _____ D.C.

AUG 20 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPLY IN SUPPORT OF MOTION TO STAY

---

[1]  This reply is being filed under seal because the deferred-prosecution agreement between the United States Attorney's Office and Mr. Epstein, discussed herein, contains a confidentiality clause.  A motion to seal was filed along with the original motion for stay.



The plaintiff's response presents several alternative theories as to why the defendants' motion for stay ought to be denied. These theories, which consist of little more than bald assertions without reference to statutory language, legislative history or case law, fail to rebut the arguments presented in the defendants' motion and therefore must be rejected.

1. **The Federal Grand Jury Investigation Is a Pending Criminal Action for Purposes of the Mandatory Stay Provision of Section 3509(k).**

Without citing any case law, or even attempting to rebut a single argument made in our moving papers, the plaintiff contends that there is no longer any pending criminal action within the meaning of section 3509(k).[2]   Resp. at 5. The plaintiff's sole citation is to a recent non-binding decision by Judge Kenneth Marra in separate litigation against Epstein brought by several different "Jane Doe" plaintiffs, denying a motion to stay.[3]   Respectfully, however, Judge Marra's order is not binding on this Court:

> Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (quotation marks and citation omitted).

---

[2] The plaintiff also devotes almost a full page of argument to the notion that the motion to stay is somehow defective because it fails to annex a copy of the Agreement (which the plaintiff erroneously claims is referenced in the motion as "Exhibit A"). Resp. at 2. This argument should be rejected out of hand. As the moving papers reflect, Exhibit A to the motion to stay is the Declaration of AUSA Ann Marie C. Villafana filed in *In re: Jane Doe*, Case No. 08-80736-CIV-Marra/Johnson (S.D. Fla.), not the Agreement itself. Further, the plaintiff's argument suggests the existence of a non-existent rule, as there is no requirement that parties annex documents referenced in a motion. Indeed, as we noted in our moving papers, the Agreement contains a confidentiality clause which expressly prohibits its disclosure. For that reason, the Agreement was not attached to the motion. Upon the Court's request, Epstein will provide the entire Agreement for *in camera* inspection.

[3] *See, e.g., Jane Doe No. 2 v. Epstein,* Case No. 08-80119-CIV-MARRA (DE 33).

1

Respectfully, we believe that Judge Marra, in deciding a difficult question of first impression, erred in "disagree[ing] that the 'deferred prosecution agreement' constitutes a 'pending criminal action.'" *Jane Doe No. 2,* Case No. 08-80119 (DE 33 at 4) (herein, "Order"). In denying Epstein's motion for a stay, Judge Marra agreed that "a stay under § 3509 is mandatory when a criminal action is pending." *Id.* He "simply disagree[d]" that there was a "pending criminal action" in the form of a deferred-prosecution agreement (*id.* at 4) and pending criminal investigation (*id.* at 3). Besides the fact of an unprecedented deferred-prosecution agreement, no federal court, under any scenario, has ever considered the meaning of "criminal action" in 18 U.S.C. § 3509(k).

Judge Marra appears to have focused exclusively on the pendency of the grand jury's investigation, and did not mention, analyze or expressly consider the effect of the pending investigations by the USAO and the FBI. Consequently, Judge Marra's footnoted discussion (Order at 2 n.2) of *United States v. Calandra*, 414 U.S. 338, 344 (1974), not only does not account for the fact that the grand jury was already convened and had already issued subpoenas in this case, but it in no way addresses the pending FBI and USAO investigations. Indeed, the actual circumstances of this grand-jury investigation aside, many federal courts, including the United States Court of Appeals for the Eleventh Circuit, expressly reject the formalistic and theoretical view of the grand-jury's function that the Order's footnoted discussion embraces. *See Campbell v. Eastland*, 307 F.2d 478, 486–87 (5th Cir. 1962)[4] (using the term "criminal action" to discuss whether civil action should be stayed pending a pre-indictment criminal investigation); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (describing a federal

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent, all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

criminal investigation as a "criminal action," even though "no indictments h[ad] been handed down," or "information[s] . . . returned"); *Souza v. Schiltgen*, No. C-95-3997, 1996 WL 241824, at *2 (N.D. Cal. May 6, 1996) (rejecting "narrowly" framed argument that a "'provisional investigation'" is somehow different from a criminal "'proceeding'" for purposes of entering a stay); *see also id.* at *2-3 (finding it irrelevant that a criminal investigation "might not result in an indictment" during pendency of parallel civil action, citing the "'clear distinction between civil and criminal actions'" (*quoting Campbell*, 307 F.2d at 487)). *See generally, DeMassa v. Nunez*, 747 F.2d 1283, 1286–87 (9th Cir. 1984) (acknowledging that the circuit courts of appeals are split on the question of whether "a criminal action [is] *in esse* before arrest or indictment," adding that some "courts [have] adopt[ed] a liberal definition of when a proceeding is *in esse*").

Regardless, Epstein made clear in his motion to stay that application of § 3509(k) is mandatory in this case, not just because of an investigation by the grand jury, but also because of the investigations by the FBI and the USAO. *See, e.g.,* Motion at 5 (quoting from the Agreement's references to "offenses that have been the subject of the joint investigation by the Federal Bureau of Investigation and the United States Attorney's Office," and to "offenses that arose from the Federal Grand Jury investigation"). Together, these activities comprise a "criminal action" within the meaning of subsection (k). Thus, besides Epstein's substantive disagreement with footnote 2 of Judge Marra's Order, we respectfully submit that the Order applies an unduly narrow and unwarranted interpretation of the core premise of Epstein's argument.

Further, Judge Marra's Order appears to have imported two additional statutory elements into the term "criminal action" that appear nowhere in the statute or legislative history. Judge Marra's Order observed, "Because the U.S. Attorney has not filed an indictment or an information against the Defendant, the Court fails to see how there is an undecided *judicial* proceeding *in*

*federal court* against Defendant." Order at 3 (emphasis added).  Section 3509(k) simply does not require a "*judicial*" proceeding, nor does it require that the investigation or prosecution be pending "*in federal court*."  It is unclear why the Order imposed these two substantial additional preconditions to applying Congress' mandate in § 3509(k).  Regardless of the answer to that question, whether Epstein satisfied those two additional preconditions is simply irrelevant to the application of § 3509(k).  For this reason alone, this Court should not follow that Order.

Section 3509(k) presents a novel and important question of statutory construction, especially when read in conjunction with 18 U.S.C. § 1595(b), *a subsequently enacted statute*, which, according to the legislative history, was *expressly modeled on* section 3509(k) and invokes *identical* substantive and policy concerns.  *See Northcross v. Bd. of Educ. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (noting that "[t]he similarity of language [used] in [two different statutes] is . . . a strong indication that the two statutes should be interpreted *pari passu*," especially where "the two provisions share a common *raison d'etre*").

Sections 3509 and 1595 share a common purpose, feature virtually identical language, and are expressly connected to one another, as reflected in section 1595's legislative history.  *See Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 761–62 (1988) (construing earlier-enacted statute in accordance with derivative statute, holding that Congress enacted the two provisions for the same purpose); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (stating that the Court "may properly conclude that Congress intended that the construction of [a later-enacted statute] should follow that of [an earlier-enacted statute]" where the statutes "share a common purpose," comprise "language . . . [that is] is almost *in haec verba*," and where "the legislative history of [the later-enacted statute] indicates that its source was [the earlier-enacted statute]").

4

It is critically important to note that when Congress enacted 1595(b)(2), *3509(k) was already in place*. *Compare* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, 108 Stat. 1796, 2149 (1994), *with* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003). As section 1595's legislative history makes clear, 3509(k) is in all material respects identical to 1595(b)(2). There is no indication that Congress meant to accord trafficking prosecutions more deference than child-sex-abuse cases; in both types of cases, Congress intended for "prosecutions . . . [to] take priority over civil redress;" and in both types of cases, Congress meant to ensure "that prosecutions . . . [are] complete[d before] . . . civil suits" are permitted to go forward. H.R. Rep. No. 108-264, pt. 2, at 16–17 (2003), as reprinted in 2003 U.S.C.C.A.N. 2421, 2434. Thus, the substantive parallelism between 3509(k) and 1595(b)(2) is enough to overcome any formalistic differences between the two provisions.

Indeed, the United States Department of Justice, in recommending the stay provision contained in 1595, pointed specifically to section 3509(k) as a legislative model. *See id.* ("Notably, in the context of 18 U.S.C. Sec. 2255 ('civil remedy for personal injuries'), all civil actions are stayed pending the completion of a criminal action."). Nothing in the relevant legislative materials suggests that 1595(b)(2) was meant to expand upon, or otherwise depart from, the stay mechanism contained in 3509(k); in fact just the opposite is true. *See id.* (showcasing 3509(k) and recommending the enactment of a functionally identical stay provision, emphasizing that "prosecutions should take priority over civil redress").

Even in using the term "prosecutions," the legislative materials suggest a fluid approach to the concept of a criminal "action" or "proceeding." *See Dixson v. United States*, 465 U.S. 482, 491 (1984) (observing that it is "often the case [that] . . . matters of statutory interpretation . . .

[cannot be decided merely by reading] the language of [a statute]," adding that when "[t]he words [of a statute] can be interpreted to support either [parties'] reading[, the Court] . . . must turn . . . to the legislative history").

If follows that when construing similar statutes, courts may properly consider whether the subject "provisions share a common *raison d'etre*." *Northcross*, 412 U.S. at 428. Here, Congress echoed (nearly verbatim) the stay mechanism contained in 3509(k) when enacting 1595(b)(2). Based on the foregoing, this Court should reasonably conclude that 3509(k) is properly construed in light of 1595(b)(2), not to distinguish 3509(k) but to illuminate its shared underlying purpose. *Cf. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, __ U.S. __, 127 S. Ct. 2518, 2522 (2007) (observing that "[w]hile a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision . . . , 'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest'") (*quoting Watt v. Alaska*, 451 U.S. 259, 267 (1981)).

The absence, in 1595(b)(2)'s legislative history, of congressional intent to depart from 3509(k) further blunts the possibility that Congress' use of slightly different wordings in these statutes was intended to be materially significant. In the earlier statute, 3509(k), Congress refers interchangeably to "criminal action[s]" and "criminal proceeding[s];" in the later statute, 1595(b), Congress refers only to "criminal action[s]," but defines that term to include "criminal investigation[s]." *Compare* 18 U.S.C. § 3509(k), *with* § 1595(b)(2). It is reasonable to infer that in drafting 1595(b)(2), Congress meant to capture the scope of the phrase "criminal proceedings," the term used in 3509(k) to complement "criminal action." To regard 1595(b)(2) as somehow a departure from 3509(k) would be to read the phrase criminal proceeding out of the statute. *See Pielage v. McConnell*, 516 F.3d 1282, 1288 (11th Cir. 2008) (observing that "'statutes . . . should

6

be construed so that no words are treated as being meaningless, redundant, or mere surplusage'" (*quoting Yapp v. Reno*, 26 F.3d 1562, 1569 (11th Cir. 1994))); *cf. Logan v. United States*, 128 S. Ct. 475, 482 (2007) (observing that words are known by the surrounding "company they keep").

Against this substantial background of plain meaning, case law and legislative history, this Court could (and, most respectfully, should) disagree with Judge Marra's Order on the question of whether 3509(k) should be construed consistently with 1595(b)(2).    Judge Marra's Order implicitly rejected all of the above arguments.  In order to justify reading 1595(b)(2) as a departure from 3509(k), the Order reasoned that "Congress *could* have made such an addition to § 3509 had it intended the mandatory stay provision to apply to pre-indictment investigations, but it did not." Order at 3 (emphasis in original).  The Order further stated, in a striking rejection of the express legislative history discussed above, that "it seems clear that Congress intended that these two statutory provisions should each have a *different* scope." *Id.* at 3-4 (emphasis supplied).  Thus, from Congress' ostensible *silence* in not "making an addition" to the prior-enacted 3509(k), the Order purported to uncover Congress' *specific intent* ("it seems clear that Congress intended") to depart from 1595(b)(2). *Id.*  Congress' silences are certainly susceptible of many interpretations, and to assign this particular specific intention in this circumstance not only strains logic, but, as discussed above, contradicts the legislative history.[5]

Courts similarly have refused to draw technical distinctions between pre-indictment matters and "criminal prosecutions." *See DiBella v. United States*, 369 U.S. 121, 131 (1962) (holding that "the mere circumstance of a preindictment motion" does not make the subject order final, hence appealable); *United States v. Peachtree*, 456 F.2d 442, 447–48 (5th Cir. 1972)

---

[5] Along the same lines in this discussion, the Order oddly appears to have overlooked that Epstein relied on over a dozen cases in briefing his motion to stay, stating instead that "The *single* case cited by Defendant in support of his motion is not on point."  Order at 4 (emphasis added).

(finding that even in the absence of formal criminal charges at the time a search warrant was issued, an order authorizing the warrant was merely "a step in a criminal prosecution" and thus unappealable)). These judicial expressions only reinforce the view that "criminal action" is not so limited in scope that it would completely exclude the sort of pre-indictment criminal investigation that remains pending against Epstein.[6]   *See generally, Standard Oil v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.").

### 2.   Section 3509(k) Applies Even Though the Plaintiff is Now Over 18.

The plaintiff contends that although she was a minor at the time the events alleged in her complaint purportedly occurred, a mandatory stay is not required under section 3509(k) because she was over 18 when she filed her lawsuit.[7]  Resp. at 7-9.  The plaintiff makes this argument without citing a single authority, and without regard to the statutes or legislative history cited in the defendants' motion to stay.  Instead, the plaintiff, borrowing heavily from the plaintiffs' briefs in *Francis*, rests her claim exclusively on arguments made and rejected in that case.  As the *Francis* court concluded:

> Moreover, Plaintiffs have not offered any authority to support their position that the stay should be lifted due to the fact that the minor Plaintiffs have now reached the age of majority during the pendency of the state criminal case. Section 3509(k) does not provide, nor have Plaintiffs presented, any legal basis that would authorize

---

[6]  More than simply claiming that the Agreement does not warrant a stay, the plaintiff argues that a stay would be "inconsistent" with the Agreement because it contemplates civil claims by purported victims under 18 U.S.C. § 2255. Resp. at 7. This argument merits no consideration, however, because *the plaintiff has not pled a claim under section 2255.* Regardless, the existence of a civil cause of action is irrelevant to whether it should be stayed while there is a pending criminal action. Indeed, every stay imposed under 3509(k) necessarily contemplates an already-filed civil action.

[7]  Judge Marra's decisions in the *Jane Doe* cases do not address this issue.

much less require a stay to be lifted in a case such as this where the victims were minors at the time of the events giving rise to the criminal charges and reached the age of 18 while both the criminal case and a parallel civil action based on the same events were pending. Instead, Plaintiffs argue that the general standard for a stay of discovery of civil proceedings is now applicable and that the facts of this case do not support the continuation of the stay.

Upon review, the Court finds this argument unavailing. Plaintiffs argue that § 3509(k) no longer applies in this case. They claim that, because there "is no similar statutory stay provision for adult victims/witnesses involved in overlapping criminal and civil cases, this Court should apply the balancing test universally applied by the courts to these types of concurrent cases." However, Plaintiffs provide no basis for the Court to apply such a test over that prescribed by § 3509(k) which has already been deemed applicable here given the victims' minor status at the time of the events giving rise to the underlying claims.

*Doe v. Francis*, No. 5:03 CV 260, 2005 WL 950623, at *2 (N.D. Fla. Apr. 20, 2005) (internal citations omitted)).

### 3.   A Discretionary Stay is Warranted.

Citing exclusively to Judge Marra's decision in the *Jane Doe v. Epstein* cases, the plaintiff argues that a discretionary stay is not appropriate because Epstein controls whether the Agreement is breached. Respectfully, Judge Marra's opinion that "Defendant is in control of his own destiny" (*Jane Doe No. 2* (DE 30 at 4)), proves too much. Applying that notion, a defendant with a pending criminal action could always "control his own destiny" as to whether the Fifth Amendment applies to the civil case against him, by pleading guilty and being sentenced at the earliest possible opportunity. *Cf. United States v. Kuku*, 129 F.3d 1435, 1437 (11th Cir. 1997) (holding that "a defendant does retain the Fifth Amendment privilege until sentencing").[8]

---

[8] The plaintiff asserts that given Judge Marra's refusal to stay the Jane Doe matters, Epstein will not be prejudiced should discovery proceed in this case. Resp. at 11. In this regard, we respectfully point out that the defendants intend to exercise their right to immediate review of Judge Marra's decision in the Eleventh Circuit Court of Appeals.

## Conclusion

Because this lawsuit arises from the same allegations as a pending criminal action, this Court should stay these cases until that criminal action is no longer pending.

Respectfully submitted,

LEWIS TEIN, P.L.
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Tel: 305 442 1101  Fax: 305 442 6744

By:

Guy A. Lewis
Fla. Bar No. 623740
lewis@lewistein.com
Michael R. Tein
Fla. Bar No. 993522
tein@lewistein.com

ATTERBURY, GOLDBERGER & WEISS, P.A.
250 Australian Avenue South, Suite 1400
West Palm Beach, Florida 33401
Tel. 561 659 8300  Fax. 561 835 8691

By:   Jack A. Goldberger
Fla. Bar No. 262013
jgoldberger@agwpa.com

*Attorneys for Defendant Jeffrey Epstein*

BRUCE E. REINHART, P.A.
250 South Australian Avenue
Suite 1400
West Palm Beach, Florida 33401
Tel. 561202 6360
Fax. 561 828 0983

By:   Bruce E. Reinhart
Fla. Bar No. 10762
BReinhart@brucereinhartlaw.com

*Attorneys for Defendant Sarah Kellen*

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served this day, August 2̶1̶, 20

2008, on counsel of record identified on the service list by U.S. Mail.

_____
MICHAEL R. TEIN

## SERVICE LIST

Richard H. Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North, Suite 404
Lake Worth, Florida  33461
Fax: 561-588-8819
*Counsel for Plaintiff C.M.A.*

cc:     Bruce E. Reinhart, Esq.
        Bruce E. Reinhart, P.A.
        250 Australian Avenue South
        Suite 1400
        West Palm Beach, Florida  33401
        Tel. 561202 6360
        Fax. 561 828 0983
        *Counsel for Defendant Sarah Kellen*

11